# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**THIRD EDUCATION GROUP, INC.,**

      **Plaintiff,**

      v.                                                                  **Case No. 07-C-1094**

**RICHARD PHELPS,**

      **Defendant.**

## ORDER DENYING MOTION FOR REMAND

On November 8, 2007, Third Education Group, Inc., ("TEG") filed a complaint against Richard Phelps ("Phelps") in Milwaukee County Circuit Court, case number 07-CV-13604. (Docket No. 1-2.) On December 6, 2007, Phelps filed a notice of removal pursuant to 28 U.S.C. §§ 1332 and 1441, and removed the state court action to this court based upon the diversity of the parties and the expectation that the amount in controversy exceeds $75,000. (Docket No. 1.) On December 13, 2007, Phelps answered the complaint. (Docket No. 3.) On January 7, 2008, TEG filed a motion seeking this court to remand the case to state court. (Docket No. 6.) Phelps has responded in opposition to this motion, (Docket No. 17), and TEG has replied, (Docket No. 20).

Following a scheduling conference, the court referred this case for an early neutral evaluation. (Docket No. 29.) That process also involved a companion case involving the same parties. At the same time Phelps filed his notice of removal in the present case, he filed his own suit against TEG alleging various violations of the Trademark Act of 1946. See case number 07-C-1095. That case is assigned to the Honorable J.P. Stadtmueller who stayed all proceedings pending the

resolution of the early neutral evaluation process. The early neutral evaluation has now been completed.

In the present case, this court has set September 2, 2008 as the deadline for discovery to be completed, and the court has scheduled a telephone status conference for September 3, 2008 at 8:30. The defendant's motion for remand remains pending before this court. The pleadings on this motion are closed and the matter is ready for resolution. The parties have previously consented to the full jurisdiction of a magistrate judge.

**FACTS**

The court finds that a brief recitation of the factual allegations contained in the complaint is necessary as they are relevant to the motion to remand.

Beginning in 2001, Phelps collaborated with Bruce Thompson ("Thompson") regarding the development of an online journal devoted educational policy issues. (Docket No. 1-2 at 2, ¶3.) This organization began in 2003 but it was not until 2004 that Thompson and Phelps agreed to adopt the name "Third Education Group" for the organization. (Docket No. 1-2 at 2, ¶¶4, 6.) Third Education Group was incorporated as a nonstock Wisconsin corporation on January 18, 2005. (Docket No. 1-2 at 5, ¶42.) In August of 2005, the Third Education Group Review, the online journal associated with TEG, received on International Standard Serial Number ("ISSN"). (Docket No. 1-2 at 6, ¶55.)

Phelps volunteered to register the organization's domain name, set up the website, and submit a trademark registration application for the name "Third Education Group." (Docket No. 1-2 at 3, ¶¶11-13.) Rather than making these registrations in the name of Third Education Group, and unbeknownst to Thompson, Phelps made these registrations in his own name. (Docket No. 1-2 at 3, ¶¶22, 27.) The trademark was registered on August 15, 2006. (Docket No. 1-2 at 5, ¶37.)

In early-March of 2006, Phelps left the TEG Review. (Docket No. 1-2 at 7, ¶65.) A week later, Phelps changed the password to the website, thus preventing anyone else from operating the TEG Review. (Docket No. 1-2 at 7, ¶68.) Phelps was removed as an officer and a director of TEG

by the board of directors on May 6, 2006. (Docket No. 1-2 at 8, ¶75.) After Phelps made claims to property published under a domain name different than those that Phelps had registered, TEG's internet service provider terminated TEG's website. (Docket No. 1-2 at 8, ¶¶78-79.)

TEG alleges six causes of action. First, TEG alleges conversion for Phelps' use of the trademark, domain names, and ISSN. Second, TEG alleges a breach of fiduciary duty for making the relevant registrations in his own name rather than the name of TEG. TEG's third claim is for estoppel on the basis that Phelps indicated that he was undertaking the relevant registrations on behalf of TEG. TEG's fourth, fifth, and sixth claims set forth alternative theories for recovery on the basis of negligent misrepresentation, intentional deceit, and strict responsibility, respectively.

In the portion of its complaint where it sets forth its damages TEG alleges:

> As a result of Defendant Phelps's actions as set forth herein, Plaintiff has suffered loss and damages in excess of $10,000.00 in direct costs and costs of time and resources invested, and will suffer still greater loss and irreparable damage due to its inability to publish and otherwise conduct operations in its own name using its corporate name, trademark, domain names and other assets rightfully belonging to Plaintiff and acquired on Plaintiff's behalf, due to Defendant's action including threat of litigation to internet service provider which effectively prevents Plaintiff's access to publication through its intended medium.

(Docket No. 1-2 at 15, ¶137.) The plaintiff continues:

> Plaintiff will continue to suffer still greater loss and irreparable damage due to confusion among prospective financial supporters, prospective contributing writers, reviewers and other participants or members, and prospective readers, due to public confusion regarding corporate identity; as well as damage to Plaintiff's academic reputation and reputation for integrity, as well as the reputation of Plaintiff's officers and directors, and the reputation of Plaintiff's work product and publications, unless Defendant be retrained and Plaintiff's rights upheld and restored by the judgment of the court.

(Docket No. 1-2 at 15, ¶138.)

The plaintiff requests a permanent restraining order, assignment of the disputed property, rescission of the statements made to the internet service provider, other equitable relief, "appropriate and just damages to compensate Plaintiff," "punitive damages as determined by this court," and for attorneys' fees and costs. (Docket No. 1-2 at 15-16, ¶139.)

## ANALYSIS

Phelps is a natural person domiciled in Iowa City, Iowa. (Docket No. 1 at 2, ¶5.) TEG is a Wisconsin nonstock domestic corporation with its principal office located in Milwaukee, Wisconsin. (Docket No. 1 at 2, ¶4.) TEG does not dispute that the parties are diverse. Rather, TEG argues that the amount in controversy does not satisfy the $75,000 threshold and thus remand is appropriate.

> Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum. Illinois v. Kerr-McGee Chemical Corp., 677 F.2d 571, 576 (7th Cir. 1982). Any doubt regarding jurisdiction should be resolved in favor of the states. Jones v. General Tire & Rubber Co., 541 F.2d 660, 664 (7th Cir. 1976), and the burden of establishing federal jurisdiction falls on the party seeking removal. Wilson v. Republic Iron & Steel Co., 257 U.S. 92 [(1921)].

Doe v. Allied-Signal, Inc., 985 F.2d 908, 911 (7th Cir. 1993).

"The amount *in controversy* is whatever is required to satisfy the plaintiff's demand, in full, on the date suit begins. Hart v. Schering-Plough Corp., 253 F.3d 272, 273 (7th Cir. 2001) (citing Gardynski-Leschuck v. Ford Motor Co., 142 F.3d 955, 958-59 (7th Cir. 1998)) (emphasis in original). It is the removing defendant, as the proponent of federal jurisdiction, to demonstrate the amount in controversy meets the statutory minimum. Meridian Sec. Ins. Co. v. Sadowski, 441 F.3d 536, 541 (7th Cir. 2006). "[A] proponent of federal jurisdiction must, if material factual allegations are contested, prove those jurisdictional facts by a preponderance of the evidence." Id. at 543. This may be accomplished in a variety of ways, for example, the plaintiff's contentions or admissions in state court, calculation based upon the facts alleged in the complaint, the plaintiff's settlement demands, or affidavits from experts or the defendant's employees or experts as to how much it would cost for the defendant to comply with the judgment sought. Id. at 541-42. "Once the facts have been established, uncertainty about whether the plaintiff can prove its substantive claim, and whether damages (if the plaintiff prevails on the merits) will exceed the threshold, does not justify dismissal." Id. at 543.

Upon a proponent of removal proving the jurisdictional facts, the burden then shifts to the opponent to demonstrate that the amount in controversy does not meet the statutory minimum. "Only if it is 'legally certain' that the recovery (from plaintiff's perspective) or cost of complying with the judgment (from defendant's) will be less than the jurisdictional floor may the case be dismissed." Id.

When injunctive relief is sought, the Seventh Circuit has identified the following four ways in which a court may assess the value of that relief for determining the amount in controversy: (1) the value of the injunction to the plaintiff exceeds the statutory minimum; (2) the injunction would require an alteration in the defendant's conduct that would cost the defendant of at least the statutory minimum; (3) the injunction would force the defendant to forego an action that is worth more than the statutory minimum; or (4) the defendant's clerical or ministerial costs of compliance with the injunction would exceed the statutory minimum. In re Brand Name Prescription Drugs Antitrust Litig., 123 F.3d 599, 609-10 (7th Cir. 1997).

For the reasons set forth below, the court concludes that the defendant has appropriately demonstrated that the amount in controversy meets the jurisdictional threshold and the plaintiff has failed to demonstrate that it is legally certain that this threshold is not satisfied.

Although the plaintiff took pains to narrowly craft a complaint that did not directly raise a trademark claim, nonetheless, favorable resolution of the plaintiff's pending claims would have preclusive effect upon the TEG's trademark claim. For example, the plaintiff seeks that Phelps "be perpetually restrained from using the domain names, trademark and corporate name," that plaintiff alleges rightfully belong to it. (Docket No. 1-2 at ¶139, 1.) Therefore, it is necessary to fully evaluate the amount in controversy in TEG's trademark claim to determine the amount in controversy in the present case.

Both TEG and Phelps seek legal and equitable relief in their related cases. In a case such as this, there are a wide variety of ways in which damages may be calculated. Rather than discussing

each and every possibility, it is sufficient if the defendant demonstrates that there is any reasonable way damages may surpass the jurisdictional threshold. Primarily, the question at the root of this dispute is the value of the name "Third Education Group." Both parties acknowledge that one way that may be acceptable to calculate the value of "Third Education Group" is to look at the time and resources invested in developing that name. (See Docket Nos. 1-2 at ¶137; 17 at 5-6.) It is undisputed that Phelps and many others invested substantial time in the development of "Third Education Group." For example, Phelps has contributed more than 2,000 hours of professional work to Third Education Group, and thus, even using a conservative estimate of the value Phelps' professional time, assessing the value of the name "Third Education Group" in this manner satisfies that jurisdictional threshold. Additionally, although TEG did not bring the present suit under the Lanham Act, because the resolution of this case would affect Phelps' rights to proceed with his related Lanham Act suit, when discerning the true amount in controversy in the present action, it is worth noting that the Lanham Act permits that damages may be tripled.

Therefore, because Phelps has demonstrated that the amount in controversy is in excess of $75,000.00 and TEG has failed to demonstrate that it is legally certain that the recovery (from plaintiff's perspective) or cost of complying with the judgment (from defendant's) will be less than the jurisdictional floor, the court shall deny TEG's motion for remand.

**IT IS THEREFORE ORDERED** that plaintiff Third Education Group's motion for remand, (Docket No. 6), is **denied**.

Dated at Milwaukee, Wisconsin this <u>6th</u> day of August 2008.

<u>s/AARON E. GOODSTEIN</u>
U.S. Magistrate Judge