## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**THIRD EDUCATION GROUP, INC.,**

        **Plaintiff,**

    **v.**                           **Case No. 07-C-1094**

**RICHARD PHELPS,**

        **Defendant.**

---

**RICHARD PHELPS,**

        **Plaintiff,**

    **v.**                           **Case No. 07-C-1095**

**THIRD EDUCATION GROUP, INC. et. al.,**

        **Defendants.**

---

## DECISION AND ORDER REGARDING THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT

---

### I. PROCEDURAL HISTORY

On December 6, 2007, the defendant, Richard Phelps ("Phelps"), removed Milwaukee County Circuit Court case number 07-CV-13604 filed by Third Education Group, Inc. ("TEG, Inc."), from state court, and it was docketed as 07-C-1094 in this district. The matter was randomly assigned to this court. On the same day, Phelps filed in federal court his own lawsuit against TEG, Inc., and Bruce Thompson ("Thompson"), case number 07-C-1095, which was randomly assigned to the Honorable J.P. Stadtmueller.

The parties subsequently consented to the full jurisdiction of this court in case number 07-C-1094, and on August 6, 2008, this court denied the plaintiff's motion to remand 07-C-1094 to state court.

On September 5, 2008, Phelps filed in both cases a motion to consolidate cases 07-C-1094 and 07-C-1095 pursuant to Federal Rule of Civil Procedure 42(a) on the basis that each involves common questions of law and fact. Phelps indicated in his motion that it was unopposed; the deadline for the opposing party to respond passed and no response was filed. Therefore, on September 29, 2008, this court granted Phelps' motion for consolidation. All parties have consented to the full jurisdiction of a magistrate judge.

Currently pending before the court are the parties' motions for summary judgment. (By Phelps, Docket Nos. 65, 66 (Brief in Support), 67 (Declaration of Phelps), 68 (Declaration of Jeffrey M. Drake) 69 (Phelps' Proposed Findings of Fact); by TEG, Inc., Docket Nos. 71, 72 (Brief in Support), 73 (Affidavit of Thompson), 74 (Affidavit of Joseph Dannecker), 75 (Proposed Findings of Fact by TEG, Inc.)).

Each party has responded. (By Phelps, Docket Nos. 77 (Phelps Response), 78 (Declaration of Phelps), 79 (Declaration of Drake) 81 (Phelps' response to proposed findings of fact); by Thompson and TEG, Inc., Docket Nos. 80 (Thompson and TEG, Inc. Response), 83 (Thompson and TEG, Inc. Response to proposed findings of fact), 84 (Affidavit of Thompson), 85 (Affidavit of Dannecker)).

And each party has replied. (By Phelps, Docket Nos. 87 (Phelps' reply), 88 (Phelps' declaration), 89 (Drake declaration), 90 (Response by Phelps to additional proposed findings of fact); by Thompson and TEG, Inc. Docket Nos. 92 (Reply by TEG, Inc.), 93 (TEG, Inc. Response to proposed findings of fact), 94 (Declaration of Thompson), 95 (Declaration of Dannecker)).

The pleadings on the parties' motions are closed and the matters are ready for resolution.

## II. FACTS

As the parties, or perhaps more accurately, one of the opposing sides, Thompson and TEG, Inc. ("TEG, Inc./Thompson") present them, the facts in this case are complex and subject to much dispute. For example, TEG, Inc./Thompson submit 188 proposed findings of fact, (Docket No. 75), and nearly 1000 pages of documents to support their positions regarding the pending motions, (see Docket Nos. 73, 74, 84, 85, 94, 95). Further, because many of the facts presented are not directly relevant to the court's present purposes, the court finds it unnecessary to set forth the facts with the level of detail exercised by the parties. The court shall aim for simplicity and will address additional facts as needed below.

The parties' dispute centers upon a federally registered trademark, "Third Education Group." Phelps envisioned creating a web-based journal focusing upon educational policy issues and recruited Thompson to join him in this endeavor. Phelps proposed calling themselves "Third Education Group," and Phelps registered, in his own name, this trade name with the U.S. Patent and Trademark Office on August 15, 2006.

Phelps also registered the internet domain names "thirdeducationgroup.org" and .net. These internet domains were intended to act as the foundation for the group's online journal.

In January of 2005, Thompson undertook incorporating Third Education Group, a step he believed to be necessary to facilitate the group obtaining tax-exempt status. The parties dispute to what extent Phelps approved the corporation's bylaws. In late-2005 and early-2006, Phelps and Thompson got into a dispute about the bylaws and whether a particular article was suitable for publication. This dispute led to Phelps blocking Thompson's ability to access the website. Thompson, in turn, copied the entire Third Education Group website and reposted it at the domain name tegr.org. In September of 2007, Thompson agreed to change his website name from Third Education Group to Independent Education Review.

3

For the sake of clarity, it is important to note that within the scope of this case there are essentially three different entities that may be referred to as "Third Education Group." The first is the unincorporated association that the court shall refer to as TEG. There is then the Third Education Group that is incorporated in Wisconsin, which the court shall refer to as TEG, Inc. Finally, there is a second Third Education Group, Inc., which was incorporated in Iowa by Phelps after his split with Thompson, but shall not be otherwise addressed in this decision.

## III. SUMMARY JUDGMENT STANDARD

A motion for summary judgment will be granted when there are no genuine issues as to material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). As provided under Rule 56(c), only "genuine" issues of "material" fact will defeat an otherwise "proper" motion for summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Material facts are those facts which, under the governing substantive law, might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of such material facts is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the nonmoving party. Id.

The movant bears the burden to establish that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970); see also Celotex Corp., 477 U.S. at 323. The moving party satisfies its burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson, 477 U.S. at 255; Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988); Spring v. Sheboygan Area School Dist., 865 F.2d 883, 886 (7th Cir. 1989). Further, "on summary judgment, a court can neither make a credibility determination nor choose between competing interests." Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1041 (7th Cir. 1993).

4

If the moving party meets its burden, the nonmoving party then has the burden to present specific facts showing that there is a genuine issue of material fact. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).

Case number 07-C-1094 comes before the court on diversity jurisdiction pursuant to 28 U.S.C. § 1332, and thus this court is required to apply state substantive law. <u>Lexington Ins. Co. v. Rugg & Knopp, Inc.</u>, 165 F.3d 1087 (7th Cir. 1999). Wisconsin law applies in the present case, and therefore this court must attempt to predict how the Wisconsin Supreme Court would decide the issues presented here. <u>Id.</u> (citing <u>Allen v. TransAmerica Ins. Co.</u>, 128 F.3d 462, 466 (7th Cir. 1997)). "Where the state supreme court has not ruled on an issue, decisions of the state appellate courts control, unless there are persuasive indications that the state supreme court would decide the issue differently." <u>Id.</u> "In the absence of Wisconsin authority, [a federal court] may consider decisions from other jurisdictions." <u>Id.</u> (citing <u>Valerio v. Home Ins. Co.</u>, 80 F.3d 226, 228 (7th Cir. 1996)).

## IV. ANALYSIS

### A. Phelps' Motion for Summary Judgment

Phelps seeks summary judgment as to only his federal trademark infringement claim (Count 1 of his complaint). (Docket No. 65.) TEG, Inc./Thompson have filed a response to this motion, (Docket No. 80), and have filed their own motion seeking that summary judgment be entered in their favor all counts of Phelps' complaint, (Docket No. 71).

Prior to its incorporation, TEG existed under Wisconsin law as a voluntary association between Phelps and Thompson. A voluntary association "is a name applied to a group of individuals who have joined together for a certain object and who are called, for convenience, by a common name." <u>Herman v. United Auto., etc., Implement Workers</u>, 264 Wis. 562, 567, 59 N.W.2d 475, 477 (1953). As a voluntary association, TEG lacked the capacity to sue or to be sued, <u>Elections

5

Bd. v. Ward, 105 Wis. 2d 543, 546, 314 N.W.2d 120, 123 (1982) (citing Crawley v. American Society of Equity, 153 Wis. 13, 17, 139 N.W. 734 (1913)); but see Teubert v. Wisconsin Interscholastic Athletic Asso., 8 Wis. 2d 373, 99 N.W.2d 100 (1959), and thus, contrary to the assertion of TEG, Inc./Thompson, TEG was not a juristic person, see 15 U.S.C. § 1127, capable of registering the trademark, see 15 U.S.C. § 1051. Rather, a voluntary association acts through its individual members. Ward, 105 Wis. 2d at 547, 314 N.W.2d at 123 (quoting Crawley v. American Society of Equity, 153 Wis. 13, 17, 139 N.W. 734 (1913)).

If a voluntary association is simply a group of individuals who join together for a certain purpose under a common name, that common name is necessarily property of the association. As such, each member of the association has a joint interest in that property. Herman, 264 Wis. at 567-68, 59 N.W.2d at 478.

Although it is undisputed that the name Third Education Group was Phelps' creation, it is similarly undisputed that Phelps created this name not to be his own property but as the name of the voluntary association he entered into with Thompson. (See Docket No. 67-5. ("I think we should call ourselves 'Third Education Group,' or something like it . . . .").) And it is further undisputed that, at least prior to the registration, the mark had never been used by Phelps individually but only on behalf of TEG. (See, e.g., Emails from Phelps to Thompson, Docket No. 73-2 at 26 ("I already got *us* a trademark and domain."); Docket No. 73-2 at 190 ("I got a card from the U.S. Patent Office a few weeks ago notifying us that they would post *our* name for a month (July) to give any other potential claimants to the name or complainants in general the opportunity to challenge *our* right to the name."); Docket No. 73-2 at 219 ("I haven't heard about *our* trademark.") (emphasis added in each)). Thus, the name belonged to the association and not to Phelps personally.

The applicant to register a trademark must be the owner of the mark. 15 U.S.C. § 1051(a). The application may identify joint owners and thus joint registrants. See Trademark Manual of

Examining Procedure ("TMEP") 803.01. "If an applicant is not the owner of (or entitled to use) the mark at the time the application is filed, the application is void and cannot be amended to specify the correct party as the applicant, because the applicant did not have a right that could be assigned." Id. (citing 37 C.F.R. § 2.71(d)); (see also Application Declaration, Docket No. 72-2 at 197 ("Applicant is the owner of the mark sought to be registered, and is using the mark in commerce on or in connection with the goods/services identified above, as evidenced by the attached specimen(s) showing the mark as used in commerce.")).

TEG, Inc./Thompson spend much time setting forth a variety of theories (conversion, misappropriation, and promissory estoppel) in an effort to argue that Phelps owes a duty to assign the trademark to TEG, Inc. However, all of these efforts must fail as a basis to compel any assignment of the mark because Phelps never owned the mark. Because TEG, and thus Phelps and Thompson jointly, owned the mark, Phelps' lack of ownership of the mark precluded him from registering the mark. Therefore, the application and subsequent registration are void and Phelps has no interest that could be assigned.

Further, having concluded that the registration is void due to Phelps' failure to identify Thompson as a joint applicant and due to Phelps' failure to use the mark prior to the registration, Phelps is precluded from relying upon the registration to enforce any alleged rights he claims under the Lanham Act. See Duffy-Mott Co. v. Cumberland Packing Co., 424 F.2d 1095, 1099-1100 (C.C.P.A. 1970). Accordingly, the court must deny Phelps' motion for summary judgment as to Count 1 of his complaint. (Docket No. 65.) Further, for the reasons set forth below, the court shall grant TEG, Inc./Thompson's motion for summary judgment and dismiss Count 1 of Phelps' complaint. The remaining counts of Phelps' complaint will be discussed later. Also, the court shall withhold entering judgment until these consolidated cases are resolved in their entirety.

7

## B. TEG, Inc. and Thompson's Motion for Summary Judgment

The pleadings of TEG, Inc. have the appearance of trying to fit a square peg in a round hole. Or perhaps the better idiom is throwing everything against the wall to see what sticks. Although the case focuses primarily upon the ownership of a trademark, in its complaint, TEG, Inc. does not present any claim relating to an infringement of a trademark. Rather, TEG, Inc. alleges a variety of common law claims, i.e. conversion, breach of fiduciary duty, estoppel, and a variety of theories of misrepresentation.

The scope of TEG, Inc./Thompson's motion for summary judgment is contradictory and thus very difficult to decipher. In their preliminary paragraph, they move for summary judgment "on the first, third and fourth causes of action in case No. 07-C-1094, and for Third Education Group, Inc. and Bruce Thompson, and against Richard Phelps on Phelps' claims in Case No. 07-C-1095**."** (Docket No. 71 at 1-2.) But then immediately below this statement, TEG, Inc./Thompson state they are seeking summary judgment as to the following claims:

> I. First, TEG alleges conversion for Phelps' use and control of the trademark THIRD EDUCATION GROUP ("the Trademark" or "the Mark"), the International Standard Serial Number 1557-2870 ("ISSN"), and domain names, specifically identifiable as "thirdeducationgroup.org" and "thirdeducationgroup.net" ("Domain Names").

> II. Second, TEG alleges Phelps breached his fiduciary duty be registering the trademark and domain names in his own name.

> III. Third, TEG alleges estoppel on the basis that Phelps represented that he acted on behalf and for the benefit of TEG when registering the Trademark and acquiring the Domain Names, and working with Thompson jointly to establish and operate *Third Education Group and the Third Education Group Review*.

> IV. In its fourth claim, TEG alleges negligent misrepresentation, based on Phelps' representations that the Trademark, Domain Names, Web Site, Trade Name and Service Mark, and all assets associated with Third Education Group were the property of Third Education Group.

(Docket No. 71 at 2.)

The breach of fiduciary duty claim is TEG, Inc.'s second claim or cause of action in the complaint and thus is explicitly excluded in TEG, Inc./Thompson's preliminary statement in their motion for summary judgment. So in light of the second quoted passage, is TEG, Inc. seeking summary judgment regarding its breach of fiduciary duty claim or not? And if so, is its motion limited to only actions related to the registration of the trademark and domain names? If its motion is so limited, what then happened to the claim raised in the complaint that Phelps breached a fiduciary duty by "asserting personal ownership and control of the trademark and domain names?" (Docket No. 1-2 at 11 ¶112.) Has TEG, Inc. abandoned this claim or is it simply not seeking summary judgment as to it (that is if TEG, Inc. is actually seeking summary judgment as to any breach of fiduciary duty claim)? And then what of the two other varieties of misrepresentation alleged in the complaint? Has TEG, Inc. abandoned these or again, is simply not seeking summary judgment as to these "alternative" claims?

Another example of confusion arises in their motion for summary judgment, when TEG, Inc./Thompson set forth the counterclaims they made against Phelps in the 07-C-1095 case. (Docket No. 71 at 3.) Then, without requesting summary judgment with respect to these counterclaims, they close this section by stating, "With this Motion, TEG and Thompson requests judgment against Phelps on the claims Phelps makes in 07-CV-1095." (Docket No. 71 at 3.) So are TEG, Inc./Thompson seeking summary judgment on their counterclaims, and, if not, why are they recited in the motion? Or perhaps TEG, Inc./Thompson are contending that they are entitled to summary judgment on Phelps' claims *because* they are entitled to summary judgment on their counterclaims?

The parties' supporting brief does not alleviate the confusion. In the portion of the brief with the heading "Scope of Motion for Summary Judgment," TEG, Inc. states that it "requests summary judgment on its first, second third and fourth claims in Case No. 07-CV-1095." (Docket No. 72 at 2.) (It should be Case No. 07-CV-1094.) TEG, Inc. then recites the four paragraphs the court quoted

9

from the motion. However, there is no mention of TEG, Inc./Thompson's request for summary judgment as to Phelps' complaint or their counterclaim in Case No. 07-CV-1095.

The contents of TEG, Inc./Thompson's supporting brief does not provide any clear answers to the court's questions as to what these parties are seeking. It is not organized in a manner that directly addresses any of the claims for which TEG, Inc./Thompson contend at various times they are seeking summary judgment. It is difficult for the court to separate the wheat from the chaff, i.e. to discern those arguments that might be considered pertinent to various claims. The court is not the only one confused by TEG, Inc./Thompson's motion, as can be seen in the response of Phelps. (See Docket No. 77 at 1-2.)

Finally, TEG, Inc./Thompson's purported affidavits are deficient in that they are not notarized but rather indicate they are "Executed under oath." After Phelps pointed out that these documents constitute neither affidavits nor declarations under 28 U.S.C. § 1746, TEG, Inc./Thompson's attorney has attempted to correct these problems by filing a motion to file corrected declarations, (Docket No. 97), to replace Docket Nos. 74 and 85. TEG, Inc./Thompson's attorney represents that these proposed declarations are identical to the purported affidavits they seek to replace (aside from a change in a date that apparently was made somewhere within the affidavit; counsel does not inform the court of where). Further, counsel for TEG, Inc./Thompson acknowledge certain citation references in both the prior and proposed documents. There being no opposition to TEG, Inc./Thompson's proposed amendment, the court shall grant this motion. (Docket No. 97.)

The threshold issue for the court is to determine the most efficient and effective way of dealing with the motion and supporting materials filed by TEG, Inc./Thompson. One option would be to deny the motion for lack of clarity, but that would only delay the case. More importantly, the court's conclusion that the federal trademark registration is invalid necessarily implicates numerous

other claims and not addressing them now would simply delay the inevitable. And likewise, with relatively little additional analysis, it is possible to recognize that certain of TEG, Inc.'s claims are not viable.

Therefore, the court concludes that it is most efficient to simply address TEG, Inc./Thompson's motion for summary judgment as it is understood by the court.

### 1. Phelps' Claims Against Thompson and TEG, Inc.

TEG, Inc./Thompson have filed their own motion seeking summary judgment in their favor as to all counts in Phelps' complaint. (Docket No. 71.) In light of this court's conclusion that the federal registration is invalid, this necessarily precludes Phelps from relying upon it to enforce any rights he might otherwise have under the Lanham Act. Therefore, the court shall grant TEG, Inc./Thompson's motion for summary judgment with respect to Counts 1 and 2 of Phelps' complaint.

The court turns now to the remaining counts of Phelps' complaint—common law claims for unfair competition, (Count 3), and trademark infringement, (Count 4), for which TEG/ Thompson seek summary judgment in their favor. Having concluded that the federal registration is invalid, and thus neither party is able to pursue remedies under the Lanham Act, common law trademark and unfair competition law are the only avenues open to either party with respect to the trademark.

"Common law rights in a trademark or tradename are created and preserved by use and not by registration. Common law trademark infringement is a branch of the law of unfair competition, and the principles used in both actions are substantially similar." First Wisconsin Nat'l Bank v. Wichman, 85 Wis. 2d 54, 60, 270 N.W.2d 168, 171 (1978) (internal citation omitted).

For the same reasons that this court concluded that the federal registration is invalid, Phelps' common law trademark and unfair competition claims must fail. The trademark was created for and used by TEG, not Phelps personally. Thus, the trademark is the property of TEG, Inc. as the

successor to TEG. Phelps has no rights in the trademark that may be enforced under statutory or common law. Therefore, the court shall grant TEG, Inc./Thompson's motion for summary judgment and dismiss Phelps' entire complaint. As stated earlier, the court shall withhold entering judgment until these consolidated cases are fully resolved.

The court shall not address whether TEG, Inc./Thompson are entitled to summary judgment on their counterclaims against Phelps because the court finds that TEG, Inc./Thompson have failed to adequately present these issues in their motion for summary judgment or to discuss them in their supporting brief.

## 2. Conversion

TEG, Inc. alleges that Phelps converted the trademark when he registered it in his own name. This claim fails for two reasons. First, in concluding that Phelps' registration was invalid, there necessarily was no successful registration and thus no possibility for conversion. Secondly, the court finds that the common law action of conversion is inapplicable to intellectual property such as trademarks. Conversion is limited to chattels, see Production Credit Ass'n of Madison v. Nowatzski, 90 Wis. 2d 344, 353-54, 280 N.W.2d 118 (1979)), and thus necessarily precludes intellectual property. See also McCarthy on Trademarks and Unfair Competition (4th Ed.) § 25:9.50 ("Occasionally, a trademark owner will allege, either along with or instead of a traditional infringement claim, that its mark has been 'converted' by defendant. Every court to consider such a claim has rejected it. The author agrees that the tort of 'conversion' should not be stretched and deformed to substitute for the traditional law of trademark infringement.")

The conclusion that intellectual property is not subject to a claim for conversion likewise precludes TEG, Inc.'s claim that Phelps converted the International Standard Serial Number ("ISSN"), domain name, or corporate name. Therefore, the court shall deny TEG, Inc.'s motion for summary judgment as to its first claim in its complaint. Although Phelps has not formally moved

12

for summary judgment with respect to any of TEG, Inc.'s claims, having concluded that this claim fails as a matter of law, the court shall nonetheless dismiss this cause of action in the complaint. Again, the entry of judgment shall be withheld until these consolidated cases are resolved in their entirety.

### 3. Breach of Fiduciary Duty

As for its claim that Phelps breached his fiduciary duty, the only acts that TEG, Inc. points to as an alleged breach of a fiduciary duty is Phelps registering the trademark and domain names in his own name and by "asserting personal ownership and control of the trademark and domain names." (Docket No. 1-2 at 11, ¶112.)

"[I]n any analysis of a claimed breach of fiduciary duty, there are two central questions to address: was the relationship a fiduciary relationship, and if so, what is the nature of the fiduciary duty that is at issue?" Zastrow v. Journal Communs., Inc., 2006 WI 72, ¶27, 291 Wis. 2d 426, 718 N.W.2d 51. These acts that TEG, Inc. challenge were done when the voluntary association TEG existed and before TEG, Inc. was created. Thus, the question arises whether a member of a voluntary association owes fiduciary duties to the association and the other members of the association?

The court has not identified any case applying Wisconsin law in which this question is answered. The case cited by TEG, Inc., Herman, 264 Wis. 562, 59 N.W.2d 475, to support its contention that a fiduciary duty exists does not actually say this. Nonetheless, Herman does state that each member of an association has a joint "right to the joint use of the funds for the purposes of the association so long as he continues to be a member," and each member has "a joint interest therein and a right to see that the funds are properly used." Herman, 264 Wis. at 567, 59 N.W.2d at 477. Essentially, Herman holds that members of an association hold the association's property as cotenants, or more specifically as tenants in common, see Wis. Stat. § 700.17(3). However, a

13

fiduciary relationship is not inherent in a tenancy in common; it may or may not exist, depending upon the circumstances of the relationship. See *Powell on Real Property* § 50.04[3].

Nonetheless, the court's statement in <u>Herman</u> that each member has "a right to see that the funds are properly used," leads this court to conclude that in a voluntary association there exists a fiduciary duty of each member with respect to the use of the property of the association. <u>See</u> <u>Zastrow</u>, 2006 WI 72, ¶28, 291 Wis. 2d 426, 718 N.W.2d 51 ("A consistent facet of a fiduciary duty is the constraint on the fiduciary's discretion to act in his own self-interest because by accepting the obligation of a fiduciary he consciously sets another's interests before his own.").

The trademark and the domain names may be regarded as assets of the association. The court finds unpersuasive Phelps' contention that he retained possession of the trademark and the domain names and TEG used them under a license agreement. Phelps produces no evidence to prove that such a license agreement existed. Rather, the license / licensee argument appears to be a post hoc rationalization for Phelps' actions.

However, a breach of a fiduciary duty does not occur simply because a fiduciary does something adverse to the principal. <u>Zastrow</u>, 2006 WI 72, ¶31, 291 Wis. 2d 426, 718 N.W.2d 51. A breach of fiduciary duty requires a state of mind of "disloyalty or infidelity," and thus mere negligence or incompetence is insufficient. <u>Id.</u>

With respect to Thompson and TEG, Inc.'s claim that Phelps breached a fiduciary duty to TEG when he failed to properly register the trademark and to register the domain name in both his name and the name of Thompson, the court finds that TEG, Inc. has failed to produce sufficient evidence to indicate it is entitled to summary judgment on this claim. TEG, Inc. fails to present any evidence to indicate that Phelps acted with the requisite state of mind. At best, the evidence might support a conclusion that Phelps acted negligently. There is nothing in the act itself, registering property of an association in the name of one of the association members, that would indicate a

breach of a fiduciary duty. For example, an association may have a checking account and although each member may have a shared interest in that account, it might be impractical to list all members of the association as joint owners of the account. Therefore, the account might be in the name of a single member who has undertaken treasurer responsibilities. Thus, the court has not been presented with sufficient undisputed evidence for it to conclude, as a matter of law, that Phelps breached a fiduciary duty in when he registered the domain names in his own name and attempted, but legally failed, to register the trademark in his own name.

Although "summary judgment is the 'put up or shut up' moment in the life of a case, <u>AA Sales & Assocs. v. Coni-Seal, Inc.</u>, 550 F.3d 605, 612 (7th Cir. 2008), and TEG, Inc. has failed to "put up," dismissal of this count of the complaint is not appropriate. Unlike certain of TEG, Inc.'s other claims, this claim does not fail as a matter of law, but rather it fails because TEG, Inc. has not mustered sufficient evidence to permit the court to grant its motion for summary judgment. Therefore, because Phelps has not moved for summary judgment with respect to this claim, the court shall not dismiss this count of TEG, Inc.'s complaint.

### 4. Estoppel

There are many varieties of estoppel, <u>see</u>, <u>e.g.</u>, Blacks Law Dictionary (7th Ed.) 570-72, and a plaintiff cannot make a claim for all varieties of estoppel simply by using the single word in his complaint. The parties seem to understand TEG, Inc. to be making a claim under promissory estoppel. (<u>See</u> Docket Nos. 77 at 14; 92 at 10-12.) However, in a footnote, TEG, Inc. contends that equitable estoppel may also apply, (Docket No. 92 at 10 n.9), and TEG, Inc. uses both terms in its brief in support of summary judgment. Ordinarily, the court would not permit a party to pursue such alternative theories when they have not been clearly pled in the complaint, but in this circumstance, because Phelps does not raise this objection, the court shall briefly discuss both varieties of estoppel.

The elements of a promissory estoppel claim under Wisconsin law are:

1. The promise is one which the promissor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promissee;

2. The promise induced such action or forbearance; and

3. Injustice can be avoided only by enforcement of the promise.

Scott v. Savers Prop. & Cas. Ins. Co., 2003 WI 60, ¶51, 262 Wis. 2d 127, 663 N.W.2d 715 (citing Hoffman v. Red Owl Stores, Inc., 26 Wis. 2d 683, 698, 133 N.W.2d 267 (1965)). Of basic importance in any analysis is that there is also a foundational element that is presumed in this oft-recited statement of Wisconsin law—there must be a promise. TEG alleges in its complaint, "Phelps promised to obtain trademark and domain registration on behalf of TEG." (Docket No. 1-2 at 12, ¶115.) However, at this stage, TEG, Inc. has failed to muster sufficient evidence to demonstrate that a promise existed. Notably, the word "promise" is entirely absent from TEG's proposed findings of fact and there is no allegation contained therein that would support the existence of a promise. (Docket No. 75.)

Turning to equitable estoppel, in response to Phelps' contention that TEG, Inc. inappropriately used promissory estoppel and equitable estoppel interchangeably, TEG, Inc. responds that "[p]romissory estoppel is a species of equitable estoppel." (Docket No. 92 at 10, n.9.) The court is not persuaded that this is an accurate statement. Promissory estoppel is ordinarily "offensive, and can be used for affirmative enforcement of a promise, whereas [equitable estoppel] is defensive, and can be used only for preventing the opposing party from raising a particular claim or defense." Alaska Trademark Shellfish, LLC v. State, 172 P.3d 764, 766 (Alaska 2007). Here, it is undisputed that TEG, Inc. seeks to use equitable estoppel offensively. The court has not identified any case where the offensive use of equitable estoppel under facts such as those presented here has been explicitly approved under Wisconsin law, and TEG, Inc. has not cited such a case.

Nevertheless, Phelps does not raise the issue (perhaps because he believed that TEG, Inc. was alleging only promissory estoppel).

Thus, "there are four elements of equitable estoppel: (1) action or non-action; (2) on the part of one against whom estoppel is asserted; (3) which induces reasonable reliance thereon by the other, either in action or non-action; (4) which is to the relying party's detriment." Affordable Erecting, Inc. v. Neosho Trompler, Inc., 2006 WI 67, ¶33, 291 Wis. 2d 259, 715 N.W.2d 620.

The court concludes that TEG, Inc.'s equitable estoppel claim, even if it is viable at all, fails because the evidence is undisputed that Phelps *did* register the relevant domain names on behalf of TEG and TEG, Inc. With respect to the registration of the trademark, although Phelps failed to successfully register the trademark, in light of the court's conclusion that the registration is invalid, it cannot prove that its reliance was detrimental.

Therefore, assuming without deciding that equitable estoppel may be used offensively by a litigant, TEG, Inc.'s claim fails as a matter of law. Thus, to the extent that TEG, Inc. is asserting this cause of action in its complaint, this count of the complaint is dismissed. As for TEG, Inc.'s promissory estoppel claim, TEG, Inc. is not entitled to summary judgment on this claim because, like its breach of fiduciary duty, TEG, Inc. has failed to submit sufficient evidence to sustain its motion.

### 5. Misrepresentation

TEG, Inc. presents three varieties of misrepresentation (negligent misrepresentation (Fourth Claim); intentional deceit (Fifth Claim); and strict responsibility (Sixth Claim)). All are identified as an "Alternative Theory." To what they are alternatives is unclear. Because TEG, Inc. discusses only its negligent misrepresentation claim in its motion for summary judgment, the court shall limit its analysis to this single claim.

The elements of negligent misrepresentation are: (1) the defendant made a representation of fact; (2) the representation was untrue; (3) the defendant was negligent in making the representation; and (4) the plaintiff believed that the representation was true and relied on it. Malzewski v. Rapkin, 2006 WI App 183, ¶20, 296 Wis. 2d 98, 723 N.W.2d 156.

The court finds no viability to this cause of action. TEG, Inc. does not directly address this claim in its initial brief in support of its motion for summary judgment and when Phelps points this out, TEG, Inc. responds with about three pages recounting various allegations of how Thompson (note, not TEG, Inc. who is the plaintiff in this claim against Phelps) relied upon Phelps to do certain acts. At no point does TEG, Inc. discuss what is the legal standard for a negligent misrepresentation claim and indicate how the undisputed facts demonstrate that it is entitled to relief on this claim. Simply because a person can show that a person might have been negligent in certain representations does not mean that this presents a cause of action for "negligent misrepresentation."

But more importantly, Phelps and Thompson were both directors of TEG, Inc. and co-principals of its predecessor entity, TEG. Under the circumstances presented in this case, the court finds it impossible to establish that TEG, Inc., the corporate entity, was misled by the acts of one of its directors. Thompson might have misunderstood certain of Phelps' representations, but even if the court were to accept this conclusion as true, it would not demonstrate that the corporate entity TEG, Inc. was deceived. Accordingly, the court finds that this claim fails as a matter of law and it shall be dismissed.

**V. CONCLUSION**

For the reasons set forth above, the court shall deny Phelps' motion for summary judgment. (Docket No. 65.) Phelps' federal registration of the trademark was invalid because he did not own the trademark and had not used the trademark prior to registration. Therefore, the court shall grant TEG, Inc./Thompson's motion for summary judgment, (Docket No. 71), as to Count 1 of Phelps'

18

complaint. Further, for the same reasons that Count 1 of Phelps' complaint must fail, so too must Counts 2-4 of Phelps' complaint, and therefore the court shall grant TEG, Inc./Thompson's motion for summary judgment, (Docket No. 71), with respect to these counts. Thus, summary judgment is granted in favor of TEG, Inc./Thompson as to all counts in Phelps' complaint and Phelps' complaint is dismissed.

As for TEG, Inc./Thompson's motion for summary judgment regarding their complaint against Phelps, (Docket No. 71), the court shall deny this motion as to all the grounds sought by TEG, Inc. However, certain claims fail as a matter of law, and therefore are dismissed, whereas with respect to other claims, TEG, Inc. is not entitled to summary judgment because it has failed to muster sufficient evidence to sustain its motion. Therefore, in light of the fact that Phelps has not moved for summary judgment as to these claims, summary judgment is simply denied.

First, as a matter of law, conversion is not applicable to intellectual property, and therefore count 1 of TEG, Inc.'s complaint is dismissed. As for TEG, Inc.'s claim that Phelps breached a fiduciary duty by registering the trademark and domain names in his own name, TEG, Inc. has failed to prove that the undisputed evidence demonstrates it is entitled judgment on this claim, and therefore TEG, Inc.'s motion for summary judgment is denied. Similarly, the undisputed evidence does not demonstrate that TEG, Inc. has proven all elements of either a claim for promissory or equitable estoppel. Because TEG, Inc., as a matter of law, cannot prove that any reliance was detrimental, its equitable estoppel claim is dismissed, whereas because TEG, Inc.'s promissory estoppel claim fails for want of sufficient evidence, summary judgment is simply denied with respect to this claim. Finally, TEG, Inc.'s negligent misrepresentation claim is dismissed because, as a matter of law, TEG, Inc. cannot prove it was deceived by any allegedly negligent misrepresentation by Phelps.

The court has not addressed any aspect of TEG, Inc./Thompson's counterclaim against Phelps. Therefore, in addition to this counterclaim in the 07-C-1095 case, the court regards the following of TEG, Inc.'s claims set forth in the 07-C-1094 case as potentially remaining for trial:

Count 2: Breach of fiduciary duty;

Count 3: Promissory estoppel;

Count 5: Misrepresentation, intentional deceit;

Count 6: Misrepresentation, strict responsibility.

**IT IS THEREFORE ORDERED** that Phelps' motion for summary judgment, (Docket No. 65), is **denied**.

**IT IS FURTHER ORDERED** that TEG, Inc./Thompson's motion for summary judgment with respect to Phelps' complaint, (Docket No. 71), is **granted**. Phelps' complaint, (07-CV-1095, Docket No. 1), is hereby **dismissed**.

**IT IS FURTHER ORDERED** that TEG, Inc.'s motion for partial summary judgment with respect to its complaint against Phelps, (Docket No. 71), is **denied**. The following claims set forth in TEG, Inc.'s complaint, (07-CV-1094, Docket No. 1-2), are hereby **dismissed**:

Count 1: Conversion;

Count 3: Equitable estoppel;

Count 4: Negligent misrepresentation.

**IT IS FURTHER ORDERED** that TEG, Inc./Thompson's motion to file corrected declarations, (Docket No. 97), is **granted**.

**IT IS FURTHER ORDERED** the court will conduct a scheduling conference with the parties on **May 28, 2009** at 9:00 A.M. in Courtroom 254 of the U.S. Courthouse, 517 E. Wisconsin Avenue, Milwaukee. No later than **May 26, 2009**, TEG, Inc. shall file with the court a statement

setting forth the specific claims and/or counterclaims it intends to proceed with at trial. The court will discuss further scheduling with the parties at this conference.

Dated at Milwaukee, Wisconsin this 15th day of May 2009.

s/ Aaron E. Goodstein
AARON E. GOODSTEIN
U.S. Magistrate Judge