# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**THIRD EDUCATION GROUP, INC.,**

      **Plaintiff,**

      v.                                       **Case No. 07-C-1094**

**RICHARD PHELPS,**

      **Defendant.**

**RICHARD PHELPS,**

      **Plaintiff,**

      v.                                       **Case No. 07-C-1095**

**THIRD EDUCATION GROUP, INC. et. al.,**

      **Defendants.**

## ORDER DENYING MOTION FOR RECONSIDERATION

On May 15, 2009 this court entered an order resolving the parties' motions for summary judgment in the above-captioned consolidated cases. (Docket No. 99.) Richard Phelps ("Phelps") has filed a motion seeking the court to reconsider the portion of its decision dismissing Phelps' complaint. (Docket No. 104, 105.) Third Education Group, Inc. ("TEG, Inc.") and Bruce Thompson ("Thompson") have responded, (Docket No. 107), and Phelps has replied, (Docket No. 109). The pleadings on this motion for reconsideration are closed and the matter is ready for resolution. A final pretrial conference is scheduled for August 10, 2009 and a court trial is scheduled to commence on August 24, 2009.

The factual basis that gives rise to the present dispute is set forth in this court's prior order, (Docket No. 99), and shall not be recounted here. Phelps contends that there exists a dispute of material fact as to whether or not Phelps and Thompson formed a voluntary association and whether the trademark belonged to the voluntary association or to Thompson individually. Thus, Phelps contends that these questions must be resolved by a jury.

As for the Phelps' argument regarding the formation of a voluntary association, Phelps contends that a dispute of material fact exists because when applying to become a 501(c)(3) organization Thompson answered "No," on IRS Form 1023 when asked: "Are you an unincorporated association? If 'Yes,' attach a copy of your articles of association, constitution, or other similar organizing document that is dated and includes at least two signatures. Include signed and dated copies of any amendments." (Docket No. 105 at 3.) Phelps' position is without merit. This form was signed February 14, 2005, (Docket No. 89-2), roughly a month after TEG was formally incorporated. Thus, this was an accurate statement; TEG was no longer a voluntary association but rather a corporation.

> Phelps also points to the fact that on this same form Thompson answered "No," when asked:
>
> Are you a successor to another organization? Answer "Yes" if you have taken or will take over the activities of another organization; you took over 25% or more of the fair market value of the net assets of another organization; or you were established upon the conversion of an organization from for-profit to non-profit status. If "Yes," complete Schedule G.

(Docket No. 105 at 6.)

Approaching the response from various scenarios does not change the court's conclusion. First, assuming that this question did, in fact, call for Thompson to disclose that TEG, Inc. was a successor to TEG, the unincorporated association, Thompson's answer to the above-quoted question might suggest that Thompson was not aware that a recognized legal relationship in the form of a voluntary association existed between him and Phelps prior to them formally incorporating TEG.

2
Case 2:07-cv-01094-AEG   Filed 07/10/09   Page 2 of 5   Document 113

But Thompson's lack of knowledge does not alter this court's legal conclusion. The undisputed evidence is that Thompson and Phelps agreed to join together for a common purpose and under a common name; this constitutes a voluntary association under Wisconsin law. See Herman v. United Auto., etc., Implement Workers, 264 Wis. 562, 567, 59 N.W.2d 475, 477 (1953). It does not matter whether each member of the association was fully aware of the formal legal nature of the relationship.

On the other hand, if Thompson was fully aware of the legal nature of his relationship with Phelps and chose to be untruthful in his answer, even wanton perjury cannot change legal facts. Regardless of what Thompson thought or stated, under Wisconsin law, the undisputed actions of Thompson and Phelps created a voluntary association that was the predecessor to TEG, Inc.

The court finds that Thompson's other arguments offered in to support his contention that a dispute of material fact exists as to whether Thompson and Phelps ever formed a voluntary association to be without merit and shall not be considered further.

Phelps also contends that the court erred when it found that there was no dispute of material fact that Phelps individually never used the "Third Education Group" mark and that the mark was created for TEG. Again, the court finds these contentions to be without merit.

It is possible to have a situation in which a voluntary association develops out of a preexisting creation of an individual (take, for example, a blog created, named, and operated entirely by a single individual that then expands into a voluntary association as it includes more collaborative members but continues to utilize the original name). Under such circumstances, the founding individual might register the name of the voluntary association as a trademark solely in his own name and then license it to the voluntary association because he has used the trademark separate from the voluntary association. However, that did not occur here. Chronologically, the association between Phelps and Thompson came first. Then came the name "Third Education

3

Group." The first and only usage of the name "Third Education Group" prior to registration was as the name for the voluntary association.

Even now in his motion for reconsideration, Phelps fails to present any evidence that prior to the registration he ever used the name "Third Education Group" in any manner apart from the voluntary association. The only evidence he presents is that he submitted the trademark application registered in his name alone. If registering a trademark was sufficient to demonstrate use of a trademark, as Phelps contends, this would create a nonsensical, circular, and fallacious proposition whereby it would be impossible for the Patent and Trademark Office to ever reject a trademark application, or for a subsequent court to invalidate a registration, based upon lack of prior use. Prior to the registration of the trademark, "Third Education Group" was used by only TEG, the voluntary association. Having never used it individually, Phelps was not entitled to register the mark in his own name. Thus, the registration was invalid. The mark was property of the voluntary association.

Additionally, Phelps again turns to the IRS 1023 form filled out by Thompson. Thompson answered "No," when asked:

> Do you or will you publish, own, or have rights in music, literature, tapes, artworks, choreography, scientific discoveries, or other intellectual property? If "Yes," explain. Describe who own or will own any copyrights, patents, or trademarks, whether fees will be charged, how the fees are determined, and how any items are or will be produced, distributed, and marketed.

(Docket No. 105 at 6.)

Again, whether it was simply a matter of Thompson misunderstanding the question or even if it was blatant perjury, Thompson's answers on a form cannot change cold hard legal realities. Absent any assignment, evidence of which has not been presented to this court, TEG, Inc., as the successor to the voluntary association TEG, alone held an interest in the "Third Education Group" trademark.

4

Finally, Phelps contends that the court should reverse its order dismissing his complaint because, even if there were no disputes of material fact, dismissal will not save judicial resources. Phelps contends that because his complaint involves the same operative facts as the issues that must be determined in a trial to resolve the issues presented by Thompson and TEG, Inc., including Phelps' claims would not substantially alter the planned trial. However, one crucial fact that Phelps omits is that because no party has demanded a jury trial as to any of Thompson or TEG, Inc.'s claims, now reinstating Phelps' claims would transform the planned court trial into a jury trial. Next, counsel for TEG, Inc. and Thompson states that, in light of the court's rulings on certain issues, the trial will be of very short duration.

The purpose of summary judgment is to narrow issues for trial. That is the effect of the court's decision, and Phelps has not persuaded this court to reconsider its prior ruling.

**IT IS THEREFORE ORDERED** that Phelps' motion for reconsideration, (Docket No. 104), is **denied**.

Dated at Milwaukee, Wisconsin this 10th day of July 2009.

s/AARON E. GOODSTEIN
U.S. Magistrate Judge
