UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**THIRD EDUCATION GROUP, INC.,**

      **Plaintiff,**

      v.                        Case No. 07-C-1094

**RICHARD PHELPS,**

      **Defendant.**

---

**RICHARD PHELPS,**

      **Plaintiff,**

      v.                        Case No. 07-C-1095

**THIRD EDUCATION GROUP, INC. and
BRUCE THOMPSON,**

      **Defendants.**

---

## ORDER GRANTING PERMANENT INJUNCTION

The fairly complex procedural history of these consolidated cases is fully recounted in the court's Decision and Order Following Court Trial, (Docket No. 138), and need not be repeated here. Suffice it to note that this court determined that Richard Phelps infringed upon Third Education Group, Inc.'s ("TEG, Inc.") trademark and breached the fiduciary duty he owed to TEG, Inc. (Docket No. 138.) Judgment was entered accordingly. (Docket No. 139.) The issue that the court resolves here is the matter of the permanent injunction.

On December 11, 2009, TEG, Inc. filed a motion seeking the court to reconsider its prior ruling with respect to its conclusion that Phelps did not violate the DMCA. (Docket No. 142.) That motion remains pending.

On December 29, 2009, the court held a conference with the parties to discuss their respective submissions regarding the form and contents of the permanent injunction to be entered. During the conference, the parties reached agreements as to certain minimum provisions of the permanent injunction and expressed their differing positions on other aspects. Based upon this discussion, there is one significant issue that the court shall more fully address. A question arose as to whether assignment of the domain names from Phelps to TEG, Inc. was within the scope of the court's decisions in this case and if so, whether the court possesses the authority to order such a transfer of assignment from Phelps to TEG, Inc.?

It is not necessary to detail all the complexities which make it possible for an internet user anywhere in the world to type in a web address and arrive at a certain website. But contrary to what some might expect, there is no single international body managing the internet to make this possible. Rather, what makes it possible for a user to type an address and reliably end up at the site intended are a series of agreements between various government actors, international institutions, and both non- and for-profit companies, perhaps most notably the Internet Corporation for Assigned Names and Numbers ("ICANN").

Registering a domain name is not like registering a trademark with the United States Patent and Trademark Office; registering a domain name involves entering into a private contract. But nonetheless, federal trademark law provides some protection for trademark holders in certain limited circumstances where a registration infringes upon the mark and authorizes the court to "order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." 15 U.S.C. § 1125(d)(1)(C). But such a remedy is authorized only if the court

finds that the party registered the mark in bad faith with the intent to profit from the mark. 15 U.S.C. § 1125(d)(1)(A). The facts of this case would not support this conclusion.

However, more importantly, TEG, Inc. did not raise any claim pursuant to 15 U.S.C. § 1125(d) in its complaint or counterclaim and thus this statutory provision is not applicable to the issue presently before the court. The only claims upon which TEG, Inc. prevailed are that Phelps breached his fiduciary duty when he locked TEG, Inc. out of the websites and violated 15 U.S.C. § 1125(a) by using the mark.

Prior to the 1999 enactment of 15 U.S.C. § 1125(d), also known as the Anticybersquatting Consumer Protection Act, P.L. 106-113, Div B, § 1000(a)(9), 113 Stat. 1536, trademark holders faced with domain names they believed infringed upon their trademarks might have turned to the Federal Trademark Dilution Act, 15 U.S.C.S. § 1125(c), see, e.g., Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316 (9th Cir. 1998), but again, no such claim is before the court. Even if such a claim was properly before the court, merely registering a domain name does not fall within the provisions of the Federal Trademark Dilution Act. Id. at 1324.

Similarly, the court finds no basis to conclude that merely registering a domain name that includes a trademark, without more, would constitute a violation of the Lanham Act. If a person registers a domain name and simply sits on it, making absolutely no use of it or effort to otherwise profit from it, the court is unaware of any provision of federal trademark law that would provide an individual with a remedy in court (although an aggrieved party may have a private administrative remedy through ICANN's Uniform Domain Name Dispute Resolution Policy).

Phelps should not derive any benefit from the use of the thirdeducationgroup domain names. To do so would run afoul of this court's order. Phelps acknowledges as much and agrees to be enjoined from use, but contends that he should be permitted to retain possession of the domain names, leaving them inactive. Phelps contends that he should be permitted to retain possession

because he was the one who undertook and financed the initial registration; he paid for the registration and it is his name alone on the registration. Cynically, but based on the history between the parties, one might suspect that Phelps is motivated less by notions of principle and maybe seeks to retain the domain efforts as one last ditch effort to frustrate TEG, Inc.

On the other hand, perhaps there is a good reason why the relevant domain names should be left blank. When Phelps split with TEG, Inc., TEG, Inc. went on to establish itself at tegr.org while Phelps continued to operate the thirdeducationgroup websites (at least until the court determined that the trademark did not belong to him, at which point the websites appear to have gone blank). If TEG, Inc. were to suddenly reappear on the thirdeducationgroup websites, individuals who may have previously understood that these websites were under the control of Phelps might be confused and believe that it is Phelps behind the sites rather than TEG, Inc. A primary purpose of federal trademark law is to prevent consumer confusion and ordering Phelps to surrender the domain names to TEG, Inc. might only exacerbate these problems. But this is only speculation by the court.

Principles of equity warrant that TEG, Inc. control the domain names. Thereafter, it will be the decision of TEG, Inc. as to what action to take, if any, in regard to these names. It is the conclusion of the court that the thirdeducationgroup domain names are the lawful property of TEG, Inc. As the court previously noted,

> The undisputed evidence demonstrates that the domain names thirdeducationgroup.org and thirdeducationgroup.net were registered for TEG and were not simply Phelps' personal website. Although registered in Phelps' name, at the time he registered these domain names, the evidence clearly established that he was doing so on behalf of TEG. As such, the domain names belonged to TEG.

(Docket No. 138 at 13 (citations omitted).)

In failing to provide access to these websites to TEG, Inc., Phelps breached the fiduciary duty he owed to TEG, Inc. Returning these domain names to the control of TEG, Inc. is required to remedy Phelps' breach of fiduciary duty. Accordingly, the court shall order Phelps to take all

-4-
Case 2:07-cv-01094-AEG   Filed 12/30/09   Page 4 of 5   Document 151

necessary actions to transfer or assign any interest in and control over the thirdeducationgroup domain names to TEG, Inc.

**IT IS HEREBY ORDERED** that for the reasons stated herein and stated in the court's prior decision, (Docket No. 138), the court enters a permanent injunction, which is affixed hereto, containing the following provisions:

1. Richard Phelps is permanently enjoined and restrained from using "Third Education Group" or any confusingly similar term as a name or mark for any goods, services, internet domain names, websites, or organization or other entity regarding education research, policy, or theory.

2. Richard Phelps is permanently enjoined and restrained from diluting the distinctive quality of the name and mark "Third Education Group."

3. Richard Phelps is permanently enjoined and restrained from representing that he retains or has had any affiliation with Third Education Group, Inc. during the period of this injunction.

4. Richard Phelps shall take all necessary steps to transfer all rights and interest he has in any domain name containing the terms Third Education Group acquired prior to March 14, 2006 to Third Education Group, Inc.

5. In accordance with 15 U.S.C. § 1119, the Director of the Patent and Trademark Office shall rectify the register with respect to the registration of any party to this action so as to identify Third Education Group, Inc. as the Owner / Registrant of the mark "Third Education Group."

Dated at Milwaukee, Wisconsin this 30th day of December, 2009.

s/AARON E. GOODSTEIN
U.S. Magistrate Judge